**FEDERAL INSURANCE COMPANY,**
**Plaintiff**

v.

**Jeanne POTAMKIN, et al., Defendants.**

**Civil Action No. 96–5428.**

United States District Court,
E.D. Pennsylvania.

April 21, 1997.

Michael J. Plevyak, White and Williams, Paoli, PA, for Plaintiff.

Glenn A. Zeitz, Glenn A. Zeitz, P.C., Philadelphia, PA, Gerald A. Stein, Philadelphia, PA, for Jeanne Potamkin, Jamin Potamkin.

Stephen R. Bolden, Fell & Spalding, Philadelphia, PA, for Mary Catherine Coraza.

## ORDER AND MEMORANDUM

KATZ, District Judge.

**AND NOW,** this 21st day of April, 1997, upon consideration of Motion for Summary Judgment of Plaintiff Federal Insurance Company; Defendant Jeanne Potamkin and Jamin Potamkin's Joint Motion to Dismiss the Complaint and/or for a Stay or Proceedings, or in the Alternative for Summary Judgment in their Favor; the responses thereto; the Stipulation of Facts; and after a hearing; it is hereby **ORDERED** that plaintiff's Motion is **GRANTED** and defendants' Motion is **DENIED.**

### DISCUSSION

**Factual Background**

Plaintiff Federal Insurance Company instituted this action seeking a declaratory judgment that under the policies it issued to defendant Jeanne Potamkin, it is not obligated to defend nor to indemnify Jeanne and Jamin Potamkin in defendant Mary Coraza's state action against them (the "underlying lawsuit"). The underlying lawsuit stems from actions that occurred after Coraza treated defendant Jamin Potamkin for psychological difficulties from 1981 to 1985. Am. Compl. ¶ 6.[1] Coraza alleges that after Jamin Potamkin had ceased to see her for treatment, he and his mother made untrue accusations about her abusing him, threatened to kill her, made harassing phone calls to her home, and attempted to run her down with their car. *See* Am. Compl.

Coraza filed criminal charges against the Potamkins, and a jury convicted them of Terroristic Threats (18 Pa.C.S. § 2706); Simple Assault (18 Pa.C.S. § 2701); Recklessly Endangering Another Person (18 Pa.C.S. § 2705); and Criminal Conspiracy (18 Pa. C.S. § 903). *Id.* ¶ 22. Defendants were sentenced to 11 1/2 to 23 months. *Id.* ¶ 23.

---

1. The Amended Complaint is attached to the Stipulation of Facts as Exhibit B.

These criminal convictions have been appealed. Stip. of Facts ¶ 3.

Coraza then filed the Complaint in the underlying lawsuit. Plaintiff filed this action seeking a declaratory judgment that under the terms of Jeanne Potamkin's primary and excess policies, the intentional act exclusion applies, and therefore it is not required to defend nor indemnify the Potamkins. Both policies contain the following intentional acts exclusion:

> **Intentional acts.** We do not cover any damages arising out of an act intended by any covered person to cause personal injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected. An intentional act is one whose consequences could have been foreseen by a reasonable person. But we do cover such damages if the act was intended to protect people or property unless another exclusion applies.

Stip. of Facts ¶ 9.

Coraza amended the Complaint on April 8, 1996. *Id.* ¶ 2. Coraza's Amended Complaint includes a count for negligence. *See* Am. Compl. ¶¶ 39–40. Plaintiff contends that despite this amendment, the underlying suit is based on intentional criminal conduct falling within the policies' exclusions. The parties have filed cross-motions for summary judgment. For the reasons stated below, plaintiff's motion is granted.

## Summary Judgment Standard

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). At the summary judgment stage, the court does not weigh the evidence and determine the truth of the matter. Rather, it determines whether or not there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The moving party has the burden of showing there are no genuine issues of material fact, *Gans v. Mundy,* 762 F.2d 338, 340–41 (3d Cir.1985), and, in response, the non-moving party may not rely merely upon bare assertions, conclusory allegations, or suspicions. *Fireman's Ins. Co. v. DuFresne,* 676 F.2d 965, 969 (3d Cir.1982).

## The Complaint Does Not Allege Facts That Would Support Recovery Under the Policy

"An insurer has a duty to defend if the complaint alleges facts that support recovery within the policy...." *Terra Nova Ins. Co. v. 900 Bar, Inc.,* 887 F.2d 1213, 1216 (3d Cir.1989). Here, all the facts point toward intentional conduct. In the section of her Amended Complaint entitled "Conduct Intended to Threaten Plaintiff," Coraza alleges that Jamin Potamkin asked another psychiatrist "what would happen to him if he ' ... killed Dr. Coraza' ... adding that ... she needed to be killed." Am. Compl. ¶ 7. According to Coraza, the Potamkins then "initiated a continuous course of conduct designed to further harass and terrorize [Coraza]" including "telephoning her at all hours," "leaving strange messages," and "having the telephone company install a ... system which allowed [the Potamkins] to monitor [Coraza's] telephone messages." *Id.* ¶ 10.

In the section entitled "Defendants' Assault of Plaintiff," Coraza describes that she encountered the Potamkins on Locust Street, and "Jeanne Potamkin then got out of the car; put her hands on its roof; and shouted to her son 'Get her Jamin, kill her.'" *Id.* ¶ 13. "Defendant Jamin Potamkin then got out of the car" and as Coraza ran "[the Potamkins] got back into their car put it into reverse; traveled west in reverse at a high rate of speed; ... turned right and proceeded ... in a forward gear at a high rate of speed; and drove the entire vehicle onto the sidewalk on Eighth Street in an intentional attempt to overtake, strike, and run down [Coraza] with the car." *Id.*

When Coraza amended her complaint, she added a count for negligence but did not change her description of the facts. *Cf.* Compl. *with* Am. Compl. These facts ring of intentional conduct; there is no mention of a negligent accident. Despite the addition of the negligence claim, the complaint could not "reasonably be amended to state a claim

under the policy" (*Britamco Underwriters, Inc. v. Emerald Abstract Co.,* 855 F.Supp. 793, 798 (E.D.Pa.1994)) because none of the facts alleged can be construed as negligent.

I read *United Servs. Automobile Ass'n v. Elitzky,* 358 Pa.Super. 362, 517 A.2d 982 (1986), *appeal denied,* 515 Pa. 600, 601, 528 A.2d 957 (1987), to confirm two propositions that are dispositive here. First, "[t]he obligation of an insurer to defend an action against the insured is fixed solely by the allegations in the underlying action." *Id.* 517 A.2d at 985. Second, "[i]n our state, the exclusionary clause applies only when the insured intends to cause a harm." *Id.* at 987. Applying these rules to the present case, the allegations set forth in Coraza's Amended Complaint demonstrate that the insureds specifically intended to harm Coraza. In the words of *Elitzky,* the Potamkins "acted even though [they] were substantially certain that an injury generally similar to the harm which occurred would result." *Id.* at 991; *see also State Farm Fire & Casualty Co. v. Griffin,* 903 F.Supp. 876, 878 (E.D.Pa.1995) (holding that the insurer did not have a duty to defend where the complaint alleged negligence but facts clearly indicated intentional conduct); *Germantown Ins. Co. v. Martin,* 407 Pa.Super. 326, 595 A.2d 1172, 1175 (1991), *appeal denied,* 531 Pa. 646, 612 A.2d 985 (1992) (finding that the insured's actions were intentional and thus not covered by the policy even though the complaint alleged accidental, negligent, and inadvertent conduct); *Donegal Mut. Ins. Co. v. Ferrara,* 380 Pa.Super. 588, 552 A.2d 699, 702 (1989) (finding no duty to defend in an action where the underlying complaint alleged intentional conduct but the insured argued that a jury could find her conduct to be only negligent).

## The Complaint Does Not Allege a Prima Facie Case of Negligence

Moreover, Coraza did not allege a prima facie case of negligence in her complaint:

> [d]espite the vague wording of this complaint and random use of the word "negligent," the [plaintiff] do[es] not allege in the complaint the breach of a particular duty of care and therefore do[es] not allege a prima facie case of negligence. A plaintiff may not dress up a complaint so as to avoid the insurance exclusion.

*Nationwide Mutual Ins. Co. v. Yaeger,* No. 93–3024, 1994 WL 447405, at *2 (E.D.Pa. Aug.19, 1994), *aff'd* 60 F.3d 816 (3d Cir.1995).

## The Criminal Convictions Preclude Coverage Under the Policies

Additionally, the Potamkins' criminal convictions preclude coverage under the policies. "Once a criminal defendant has been convicted and sentenced, a plaintiff in a civil proceeding may invoke collateral estoppel to preclude the defendant from denying his criminal acts." *Shaffer v. Smith,* 543 Pa. 526, 673 A.2d 872, 875 (1996). In this case, all of the crimes for which the defendants were convicted have a mens rea of at least recklessness.[2] "A person acts recklessly . . . when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S. § 302(b). The policy defines an intentional act as "one whose consequences could have been foreseen by a reasonable person."[3] Thus, reckless conduct clearly falls under the policy's definition of an intentional act as the policy only requires that a reasonable person would have foreseen the consequences and the more stringent recklessness standard requires that the defendants did foresee the consequences and then

---

2. While Simple Assault may be done negligently, the statute requires that the defendant negligently *cause* bodily injury to another with a deadly weapon. *See* 18 Pa.C.S. § 2701(a)(2). Here, no bodily injury was caused. *See* Resp. of Defs. at 9. Thus, the Potamkins' convictions must have been for either (1) attempting to cause or intentionally, knowingly, or recklessly causing bodily injury or (2) attempting by physical menace to put another in fear of imminent serious bodily injury.

3. The broadness of this exclusionary clause could raise concern in a different factual scenario than the present one. However, the facts alleged in the underlying lawsuit are so clearly within the band of the meaning of the exclusion that it is not necessary to decide whether another set of facts could fall within an area of ambiguity in applying the language of the policy.

consciously disregarded them.[4]

Plaintiffs contend that other courts have required an insurer to defend reckless conduct. *See, e.g., Elitzky,* 358 Pa.Super. 362, 517 A.2d 982. However, in *Elitzky,* the policy did not define an expected or intended act. *Id.* 517 A.2d at 984. Here, the policy defines what an intentional act is and criminal recklessness falls within that definition. Additionally, the court's conclusion was based on a definition of recklessness under libel law where the court found that the insureds could have been found to be reckless despite there desire to help society. *Id.* at 990. The criminal definition of recklessness, however, precludes such a conclusion as it requires that the risk be unjustifiable, i.e., that the risk the insureds were taking would not help society. Indeed, under these facts, it is hard to imagine how if the Potamkins did act recklessly, they would nevertheless feel that their actions were aiding society.

Finally, the Potamkins' reliance on the requirement that the criminal recklessness be "a gross deviation from the standard of conduct that a reasonable person would observe in the actor's situation" (18 Pa.C.S. § 302(b)(3)) is misplaced. The Potamkins contend that this language likens recklessness more with negligent conduct than with intentional conduct. However, unlike negligent conduct, recklessness requires that the defendant "consciously disregard" the risk that he is presenting. The requirement that this risk be a gross deviation from the conduct of a reasonable person indicates where tort law and criminal law diverge—not every action that is "unreasonable" and thus potentially covered by tort law is covered by the criminal law. Rather, the risk taken must be so severe as to be a "gross deviation."

### Requiring the Insurer to Defend Would Violate Public Policy

Finally, requiring the plaintiff to defend the insureds would violate public policy. "The courts of Pennsylvania have refused to require an insurer to defend an insured for his own intentional torts and/or criminal

acts." *Martin,* 595 A.2d at 1175. Here, the entire basis of Coraza's claims are the acts for which the defendants were criminally convicted. If required to defend the Potamkins in the underlying action, the plaintiff's entire role would be to defend what has already been deemed to be criminal conduct. Thus, it would violate Pennsylvania's public policy to require the plaintiff to defend the Potamkins in the underlying action.

### *JUDGMENT*

**AND NOW,** this 21st day of April, 1997, it is hereby **ORDERED** that judgment is entered in favor of the plaintiff, Federal Insurance Company, and against defendants, Jeanne and Jamin Potamkin.

---

4. *Mohn v. American Casualty Co.,* 458 Pa. 576, 326 A.2d 346 (1974) does not compel a contrary conclusion. Although the court held that the doctrine of foreseeability was inapplicable to insurance contracts, this holding was in the absence of specific contractual language to the contrary. This court agrees with *Mohn* that a court should not rewrite the policy.