CAPANO MANAGEMENT CO., Louis Capano & Associates, Inc. and Louis J. Capano, Jr., individually and on behalf of Brandywine Plaza III Associates, L.P., Capano Investments and Landmark Motels, Plaintiffs,

v.

TRANSCONTINENTAL INSURANCE CO., Federal Insurance Co., American Casualty Co. of Reading, PA, and Vigilant Insurance Co., Defendants.

No. Civ.A. 99–22 MMS.

United States District Court, D. Delaware.

Dec. 9, 1999.

John C. Phillips, Jr., Phillips, Goldman & Spence, P.A., Wilmington, Delaware; of counsel: Elizabeth Read Carruthers, Welsh & Recker, P.C., Philadelphia, Pennsylvania, for plaintiffs.

John A. Elzufon, Elzufon & Austin, P.A., Wilmington, Delaware; of counsel: Geoffrey A. Kahn, and Albert S. Lee, Ballad Spahr Andrews & Ingersoll, LLP, Philadelphia, Pennsylvania, for defendants Transcontinental Insurance Co. and American Casualty Co. of Reading, PA.

Robert J. Katzenstein, Smith, Katzenstein & Furlow LLP, Wilmington, Delaware; of counsel: Alfred W. Putnam, Jr., and Rebecca S. Rimmer, Drinker Biddle & Reath LLP, Philadelphia, Pennsylvania,

for defendants Federal Insurance Co. and Vigilant Insurance Co.

## OPINION

SCHWARTZ, Senior District Judge.

### I. Introduction

Louis J. Capano, Jr. ("Louis") and several of his business entities (collectively referred to as "Plaintiffs") filed a complaint seeking a declaratory judgment and asserting breach of contract against several insurance carriers ("Defendants") which have policies insuring the Plaintiffs. The Plaintiffs seek declaratory judgments that the Defendants must defend and indemnify the Plaintiffs in the underlying state court civil suit, *Kathleen Fahey–Hosey, et al. v. Thomas Capano, et al.*, Del.Sup.Ct., C.A. No. 98C–06–299 (Del.Super. Aug. 31, 1999) (the "underlying suit"). Plaintiffs also seek damages for the Defendants' alleged breaches of their respective insurance contracts by reason of the carriers refusal to defend and indemnify the Plaintiffs in the underlying suit. Jurisdiction is predicated on diversity of citizenship, pursuant to 28 U.S.C. § 1332. The relevant decisional law is the law of the State of Delaware.

The underlying civil suit is a suit by the family and estate of Anne Marie Fahey against Thomas Capano, his brothers Louis, Gerard, and Joseph, and several Capano family business entities. The complaint in the underlying suit (the "underlying complaint") alleges tortious conduct arising out of Thomas Capano's murder of Anne Marie Fahey and subsequent efforts to avoid prosecution for the murder. The underlying complaint contains counts against the Plaintiffs for conversion, spoliation, intentional infliction of emotional distress, and conspiracy.

Defendants Transcontinental Ins. Co. ("Transcontinental") and American Casualty Co. ("American") have filed a joint motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants Federal Ins. Co. ("Federal") and Vigilant Ins. Co. ("Vigilant") have also filed a similar joint motion.

Defendants contend they have no duty to defend or indemnify the Plaintiffs because Louis' actions, as alleged in the underlying complaint, fall within the intentional act exclusions in each of the insurance policies. The Plaintiffs argue that the Defendants have a duty to defend all of the claims because at least some of the allegations in the complaint fall outside of the intentional act exclusions.

The Court holds that Defendants have no duty to defend the underlying claims for conversion and spoliation. However, the Defendants do have a duty to defend the underlying claims for intentional infliction of emotional distress and conspiracy. Because an insurer must defend the entire suit if it has a duty to defend even a single claim, the Court holds that the Defendants have a duty to defend the entire underlying suit until final disposition of the intentional infliction of emotional distress and conspiracy claims.

### II. Statement of Facts

#### A. The Underlying Compliant Against Louis

The underlying suit alleges the following pertinent facts. In 1993, Thomas Capano began having an extramarital affair with Anne Marie Fahey. Anne Marie broke off the affair in September, 1995. For the next few months, until May, 1996, Thomas continued to call Anne Marie, send her e-mails, and show up unexpectedly at her apartment. On June 27, 1996, Thomas took Anne Marie to dinner and back to his home. Sometime that evening, Thomas shot and killed Anne Marie as she sat on his sofa. Thomas, and his brother Gerard, then placed her body inside a cooler and dumped the cooler into the Atlantic Ocean. When the cooler failed to sink, Thomas and Gerard removed Anne Marie's body from the cooler, Gerard gave Thomas two

anchors, which Thomas tied to the body, and then dumped the body into the ocean.

On June 30, 1996, Thomas told Louis that the police had questioned him about Anne Marie Fahey's disappearance. He also told Louis that he had been having an affair with Anne Marie. In addition Thomas told Louis that he had dinner with Anne Marie on June 27, that after dinner he and Anne Marie returned to his house, and that Anne Marie slit her own wrists and bled on Thomas' sofa. In addition, Thomas told Louis that he dumped the sofa and some of Anne Marie's personal belongings in a dumpster on a property controlled by Louis and his business entities. Thomas asked Louis to have the dumpster emptied as soon as possible.

On the next day, Thomas called Louis to ask whether the dumpster had been emptied and to express concern that the police may look in the dumpster to investigate the disappearance of Anne Marie. After this call, Louis ordered the property manager to have the dumpster emptied.

In August 1996, Louis received a subpoena to testify before a federal grand jury investigating the kidnaping of Anne Marie. Louis advised the prosecutors that he would assert his Fifth Amendment privilege against self incrimination. Subsequently, the prosecutors granted Louis immunity and directed him to testify before the grand jury.

Prior to Louis testifying, Thomas told Louis that he had dumped a gun, along with the sofa, in the dumpster. Thomas asked Louis to not tell the grand jury about the sofa and the gun. Thomas also asked Louis to fabricate an alibi for Thomas, saying that Louis and Thomas had a business meeting together on the morning after the murder. On August 29, 1996, Louis complied with Thomas' request and testified falsely to the grand jury.

On October 8, 1996, Louis appeared before the grand jury a second time because he had requested an opportunity to clarify his testimony. However, Louis again testified falsely about the business meeting on the morning after the murder. Sometime after that date, in late October or early November, 1996, Gerard Capano told Louis about Thomas' murder of Anne Marie, including the details of how Thomas and Gerard had disposed of her body at sea.

On November 10, 1997, over one year after having lied under oath to the grand jury, Louis made a deal with prosecutors which included testifying against his brother Thomas in the murder of Anne Marie. On November 13, 1997, Louis testified truthfully to the grand jury about the murder and his involvement in the cover up. His testimony helped lead to the indictment, arrest, and conviction of Thomas Capano for murder.

The underlying complaint contains four counts against Louis and his business entities. Count V alleges conversion of Anne Marie's personal effects that were dumped in the dumpster. Count VI alleges intentional infliction of emotional distress. Count VII alleges conspiracy to obstruct justice and to intentionally or recklessly inflict emotional distress. Finally, Count VIII alleges spoliation by reason of destroying and concealing evidence.

### B. The Insurance Policies

The Plaintiffs seek to have the Defendants defend and indemnify them in the underlying suit based on various excess and/or umbrella insurance policies that cover "bodily injury" and "property damage."

Two policies issued by Transcontinental, and one policy issued by American, cover "bodily injury" and "property damage." All three policies contain an intentional act exclusion which excludes from coverage " 'bodily injury' or 'property damage' expected or intended from the standpoint of the insured."

One policy issued by Federal covers "bodily injury" and "property damage." However, this policy contains an "inten-

tional act" exclusion which excludes from coverage:

> an act that is intended by the insured or can be expected from the standpoint of a reasonable person to cause bodily injury or property damage, even if the injury or damage is of a different degree or type than actually intended or expected.

Two policies issued by Vigilant and two policies issued by Federal cover "personal injury" and "property damage." However, each of these policies contains an "intentional act" exclusion which excludes from coverage:

> any damages arising out of an act intended by any covered person to cause personal injury and property damage, even if the injury is of a different degree or type than actually intended or expected. An intentional tort is one whose consequences could have been foreseen by a reasonable person.

## III. Standard of Review

A motion to dismiss for failure to state a claim, pursuant to Rule 12(b)(6), should be granted only if, accepting all allegations in the complaint as true and viewing them in the light most favorable to the plaintiffs, the plaintiffs are not entitled to relief as a matter of law. *See In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1420 (3d Cir.1997). Accordingly, the Court views all of the allegations in the complaint and the underlying complaint in the light most favorable to the Plaintiffs.

## IV. Discussion

In their briefs and at oral argument, all parties agreed that only the duty to defend is currently at issue. At this stage, the duty to indemnify and the contract claim are not yet ripe for decision. *See United Services Automobile Ass'n v. Elitzky*, 358 Pa.Super. 362, 380, 517 A.2d 982, 992 (1986). Accordingly, this opinion analyzes

**1.** The court notes that the duty to defend is broader than the duty to indemnify. *See Nat'l Union Fire Ins. Co. v. Rhone–Poulenc Basic Chemicals Co.*, 1992 WL 22690, at *8 (July 15,

only whether the Defendants have a duty to defend the Plaintiffs in the underlying suit.[1]

## A. Overview of an Insured's Duty to Defend

Under Delaware law, an insurer has a duty to defend the insured if the allegations in the underlying complaint fall within the terms of the insurance policy. *See Continental Casualty Co. v. Alexis I. duPont School Dist.*, 317 A.2d 101, 103 (Del.1974). In order to avoid a duty to defend because of an exclusion, every allegation of the underlying complaint must fall " 'solely and entirely' within specific and unambiguous exclusions from coverage." *Rhone–Poulenc*, 1992 WL 22690, *8. The insurer has the burden of proving that there is no possible situation where the insurer would be obligated to defend the insured. *See id.*

Delaware courts follow three guiding principles in comparing the allegations in the underlying complaint to an exclusion in the insurance contract:

> (a) where there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured.
>
> (b) any ambiguity in the pleadings should be resolved against the carrier;
>
> (c) if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises.

*Continental Casualty*, 317 A.2d at 105.

## B. Interpretation of the Intentional Acts Exclusions

Although each of the intentional act exclusions has slightly different language, the Court interprets them to have the same meaning for purposes of this decision. At oral argument, the Defendants

1992). Therefore, if there is no duty to defend there likely will be no duty to indemnify and no breach of the insurance contracts.

conceded that each exclusion should be interpreted the same. Moreover, Delaware law instructs the Court to interpret them the same because each exclusion contains the language "intended or expected." *See, e.g., Farmer in the Dell Enterprises, Inc. v. Farmers Mut. Ins. Co. of Del., Inc.,* 514 A.2d 1097, 1099 (Del.1986) (interpreting the meaning of an intentional acts exclusion with the language "expected or intended"); *Nationwide Mut. Fire Ins. Co. v. Smith,* 1998 WL 433941, at *3–*4 (1998) (interpreting the meaning of an intentional act exclusion containing "expected or intended" but slightly different wording). The language in each intentional act exclusion is similar to the language of the exclusions in *Farmer in the Dell* and *Smith.* At this procedural stage, each of the intentional acts exclusions in this case will be given the same meaning as the intentional acts exclusion in *Farmer in the Dell.*

■ According to *Farmer in the Dell,* an intentional act exclusion excludes "an intentional act coupled with an intent to cause some injury or damage so long as it is reasonably foreseeable that the damage which actually followed would occur." *Farmer in the Dell,* 514 A.2d at 1099. Thus, to be excluded from coverage, each count of the complaint must allege three elements: (1) an intentional act;[2] (2) an intent to cause some injury or damage; and (3) actually causing either the intended injury or damage or a reasonably foreseeable damage or injury. *See id.*

## C. Count V: Conversion of Anne–Marie's Personal Property and Count VIII: Spoliation

Count V alleges conversion of Anne Marie's personal effects that were placed in the dumpster. This count alleges that Louis had no claim of ownership to Anne Marie's effects, that Louis exercised unlawful control over the effects, that Louis intended to deprive Anne Marie's estate of the effects, that the estate has been deprived of the effects, and that Louis actions were "intentional, wilful, malicious, outrageous, and in bad faith."

Count VIII alleges spoliation of evidence.[3] This count alleges that Louis "wilfully participated in conduct designed to mislead law enforcement officers and the Faheys by, *inter alia,* destroying and concealing evidence of the murder." The count further alleges that Louis knew that a lawsuit by the Faheys seeking redress for the murder was probable and that Louis' actions were designed to interfere with the Fahey's ability to bring that lawsuit.

■ The allegations of both Counts V and VIII allege all three elements· required for an intentional act exclusion under *Farmer in the Dell.* As to the first element, Counts V and VIII allege only intentional acts, which are those acts where the actor performs an act with the intent to perform that act. *See Camac v.*

---

**2.** Plaintiffs have argued that the first prong of the *Farmer in the Dell* test should require an intentional tort instead of an intentional act. However, this argument fails because it would render meaningless the second prong of the test which requires an intent to cause injury or damage. Moreover, the intentional act exclusion may exclude from coverage certain intentional acts that would not constitute an intentional tort.

**3.** This count has been dismissed because spoliation is not a tort recognized by Delaware law. *See Fahey–Hosey v. Capano,* 1999 WL 743985, *3 (Del.Super.1999) (citing *Lucas v. Christiana Skating Center,* 722 A.2d 1247, 1250 (Del.Super.1998)). The issue before this Court is distinct from the issue before the Delaware Superior Court. That Court was called on to decide whether the complaint stated a claim for spoliation as a matter of law. This Court must decide, instead, whether the allegations pleaded in Count VIII of the complaint fall within the intentional act exclusion in the insurance contracts. Moreover, the decision of the Delaware Superior Court does not render the issue before this Court moot. This Court must determine whether Defendants had a duty to defend until dismissal of this count. If so, the Defendants may have a duty to pay for the defense of the lawsuit until the time Count VIII was dismissed.

*Hall,* 698 A.2d 394, 397 (Del.Super.Ct.1996). In *Camac,* a man that punched another man committed an intentional act because he threw a punch with the intent of throwing the punch. *See id.* Likewise, Count V alleges that Louis removed Anne Marie's effects from the dumpster with intent of removing them from the dumpster. Count VIII alleges two intentional acts by Louis: the act of destroying evidence by having the sofa and Anne Marie's personal effects removed from the dumpster, and the act of concealing evidence by testifying falsely to the grand jury on two occasions. Since both Counts V and VIII allege an intentional act, the first element of the test has been satisfied.

As to the second element, Counts V and VIII allege that Louis acted with intent to cause some injury or damage, which need not include an intent to cause the actual damage. *See Farmer in the Dell,* 514 A.2d at 1100. In *Farmer in the Dell,* a boy intentionally set fire to a trash can which resulted in burning down a nearby building. The court held that, even if the boy had no intent to cause damage to the building, the boy's actions fell under an intentional act exclusion because he intended to cause damage to trash. *See id.*

Likewise, Count V alleges that Louis intended to cause an injury to Anne Marie's estate by converting her personal property. Even if Louis had no intent to harm Anne Marie's estate, the allegations of the complaint also evince Louis' intent to harm Anne Marie directly by converting her property.

Similarly, Count VIII alleges that Louis intended to cause harm to the Fahey family by spoliation of evidence. However, even if Louis had no intent to harm the family, the complaint also alleges that Louis intended to obstruct the police investigation into the disappearance of Anne Marie. Count VIII alleges that Louis intended to hinder the police investigation because he disposed of the sofa and Anne Marie's personal effects only after Thomas told Louis that Thomas was being questioned about Anne Marie's disappearance. In addition, Count VIII alleges that Louis intended to impede the police investigation by testifying falsely to the grand jury at Thomas' request and by fabricating an alibi for Thomas. Even if Louis did not know that Thomas had murdered Anne Marie or that law enforcement authorities were investigating a murder, not a kidnaping, Louis had the intent to cause some damage to the government investigation. Therefore, Count V and Count VIII both allege that Louis acted with intent to cause injury or damage, satisfying the second prong of the intentional act exclusions.

As to the third element, Counts V and VIII allege that Louis caused a reasonably foreseeable injury, which is any "natural, foreseeable, and expected and anticipatory result" of the intentional act. *State Farm Fire and Casualty Co. v. Hackendorn,* 605 A.2d 3, 8 (Del.Super.Ct.1991). In *Hackendorn,* a shooter caused the reasonably foreseeable injury of wounding a bystander when he intentionally shot at his wife with intent to harm his wife. *See id.* Likewise, Count V alleges that Louis caused the injury of depriving Anne Marie's estate of her personal property. This result was a reasonably foreseeable injury of acting with the intent to deprive Anne Marie of her personal property. Similarly, Count VIII alleges that Louis caused the injuries of interfering with a murder investigation and interfering with the Fahey family's ability to bring a civil lawsuit based on the murder. Both of these injuries were natural and foreseeable results of Louis' intent to interfere what was then a kidnaping investigation. It follows that Counts V and VIII allege Louis caused reasonably foreseeable injuries, thereby satisfying the third prong of the intentional act exclusions.

In conclusion, because the allegations of Counts V and VIII meet all three prongs of the *Farmer in the Dell* test, they fall under the intentional act exclusions of the insurance policies.

### D. Count VI: Intentional Infliction of Emotional Distress

Count VI alleges intentional infliction of emotional distress ("IIED").[4] Depending on how it is pleaded, the tort of IIED may or may not fall under an intentional act exclusion. In this case, the IIED allegations of Count VI of the underlying complaint do not fall under the intentional act exclusion. Therefore, the Defendants do have a duty to defend this count of the underlying complaint.

■ The tort of IIED does not necessarily fall under an intentional act exclusion. Delaware has adopted the Restatement definition of IIED, which provides that "one who by extreme and outrageous conduct intentionally *or recklessly* causes severe emotional distress to another is subject to liability for such emotional distress." *Mattern v. Hudson*, 532 A.2d 85, 86 (Del.Super.Ct.1987) (emphasis added) (adopting Restatement (Second) of Torts § 46(1) (1979)); *see also Snowden v. State*, 677 A.2d 33, 38 (Del.1996). The plaintiff must prove: (1) extreme and outrageous conduct; (2) an intent to cause severe emotional distress *or* reckless disregard with respect to causing emotional distress; and, (3) the conduct actually caused severe emotional distress. *See Mattern*, 532 A.2d at 86; Restatement (Second) of Torts § 46(1); *accord Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 85 (3d Cir. 1987). In one sense, intentional infliction of emotional distress is a misnomer because, in Delaware, it encompasses both intentional and reckless infliction of emotional distress.

As previously rehearsed, Delaware law has defined an intentional act exclusion to exclude conduct from coverage only if it constitutes (1) an intentional act; (2) an intent to cause some injury or damage; and (3) actually causing either the intended injury or damage or a reasonably foreseeable damage or injury. *See Farmer in the Dell*, 514 A.2d at 1099. The issue is whether the "intent to cause an injury" prong of the *Farmer in the Dell* test can be met by an IIED claim which allows the plaintiff to prove that the defendant acted with mere reckless disregard for the injury of emotional distress, instead of intent.

Because the Delaware Supreme Court has not addressed this issue, this Court must predict what the Delaware Supreme Court would decide. *See Farris v. JC Penney Co., Inc.*, 176 F.3d 706, 713 (3d Cir. 1999). In order to make this prediction, the Court considers Delaware Superior Court decisions, federal court decisions interpreting Delaware law, state and federal decisions under other analogous state law, considered dicta, scholarly works, and any other reliable indicia of how the Delaware Supreme Court would decide this issue. *See id.; 2–J Corp. v. Tice*, 126 F.3d 539, 541 (3d Cir.1997).

This Court has been unable to locate any federal or state authority interpreting Delaware law on this issue. However, this Court finds persuasive resolution of this issue in cases arising under Maine and Pennsylvania law. *See Maine Mut. Fire Ins. Co. v. Gervais*, 715 A.2d 938, 941–42 (Me.1998); *Elitzky*, 358 Pa.Super. at 377, 517 A.2d at 990; *Sphere Drake, P.L.C. v. 101 Variety, Inc.*, 35 F.Supp.2d 421, 430 (E.D.Pa.1999) (decided under Pennsylvania law); *United States Fire Ins. Co. v. Rothenberg*, 1998 WL 778354 (E.D.Pa.1998) (decided under Pennsylvania law). Both Maine and Pennsylvania have adopted the Restatement definition of IIED so that it is provable by showing either intent or recklessness. *See id.* Both states have also adopted the Restatement definition of "recklessness," which distinguishes be-

---

4. In the underlying suit, this count has been dismissed for failure to state a claim because the conduct attributed to Louis Capano was not outrageous. *See Fahey–Hosey v. Capano,* 1999 WL 743985, *3 (Del.Super.1999).

Nonetheless, this Court must decide whether the Defendants have a duty to defend this count of the underlying complaint. *See, supra,* note 3.

tween intent and recklessness.[5] *See id.* In each of these cases, the court ruled that, because recklessness is different from intent and because IIED is provable by showing recklessness, a claim for IIED does not necessarily fall under an intentional act exclusion.[6]

■ Like Maine and Pennsylvania, Delaware has already adopted the Restatement version of IIED which allows proof of IIED by intent *or* recklessness. *See Mattern,* 532 A.2d at 86; *Snowden,* 677 A.2d at 38. Neither the parties nor the Court could locate any Delaware case adopting the Restatement definition of recklessness. However, since Delaware has adopted the Restatement definition of IIED, it is likely to adopt the Restatement definition of recklessness referenced in the Restatement definition of IIED.[7] Moreover, in other contexts, Delaware courts have already adopted a definition of recklessness which distinguishes between intentional and reckless conduct.[8] There-

---

**5.** The Restatement defines two types of "reckless" conduct. *See* Restatement (Second) of Torts § 500, Comment a (1979). In the first type, "the actor knows, or has reason to know ... of facts which create a high degree of risk of physical harm to another and deliberately proceeds to act ... in conscious disregard of, or indifference, to that risk." *Id.* In the second type, "the actor has such knowledge, or reason to know, of the facts, but does not realize or appreciate the high degree of the risk involved, although a reasonable man in his position would do so." *Id.*

Moreover, the Restatement distinguishes between intentional and reckless conduct: While an act to be reckless must be intended by the actor, the actor does not intend to cause the harm which results from it. It is enough that he realizes or, from the facts he knows, should realize, that there is a strong probability that harm may result, even though he hopes or even expects that his conduct will prove harmless. However, a strong probability is a different thing from the substantial certainty without which he cannot be said to intend the harm in which his act results.

Restatement (Second) of Torts § 500, comment f.

**6.** The Court does not find persuasive a line of cases from other states which have held that IIED does fall under an intentional act exclusion because in each of these cases the court stated that IIED could only be proven by showing intent, and made no mention of proof by recklessness. *See Hain v. Allstate Ins. Co.,* 221 Ga.App. 486, 487, 471 S.E.2d 521, 522 (1996) (IIED is an intentional tort so it is excluded by intentional act exclusion—no mention of proof by recklessness); *I. Appel Corp. v. St. Paul Fire & Marine Ins. Co., Inc.,* 930 S.W.2d 550, 552 (Tenn.App.1996) (same); *Rulli v. State Farm Fire and Cas. Co.,* 479 N.W.2d 87, 89 (IIED has intent to injure as a necessary element so it is under intentional act exclusion—no mention of proof by recklessness); *State Farm Fire and Casualty Co. v.*

*Hiermer,* 720 F.Supp. 1310, 1314 (S.D.Ohio 1988) (same); *Tapscott v. Allstate Ins. Co.,* 526 So.2d 570, 571 (Ala.1988) (same); *Michaelian v. State Compensation Ins. Fund,* 50 Cal.App.4th 1093, 1107, 58 Cal.Rptr.2d 133 (1996) (IIED barred by intentional act exclusion but makes no mention of recklessness). These cases are not instructive because they do not analyze the issue under the Restatement definition of IIED.

**7.** The Delaware courts have shown a remarkable tendency to follow the Restatement of Torts. A WESTLAW search of Delaware cases revealed that the Supreme Court of Delaware has cited the Restatement of Torts in 124 cases since 1941 and that other Delaware state courts have cited the Restatement of Torts in 267 cases since 1934.

**8.** "A person acts in a wanton or reckless manner when he or she is aware of and consciously disregards a substantial and unjustifiable risk to the rights or the safety of another." *Koutoufaris v. Dick,* 604 A.2d 390, 398 (Del.1992). Recklessness amounts to an "I don't care attitude." *Hazewski v. Jackson,* 266 A.2d 885, 886 (Del.Super.Ct.1970). Recklessness can be defined as "a conscious indifference to the rights of others." *Jardel v. Hughes,* 523 A.2d 518, 530 (Del.Supr.1987). The Delaware Pattern Jury Instructions reflect these definitions by stating that recklessness is:

a knowing disregard of a substantial and unjustifiable risk. It amounts to an "I don't care" attitude. Recklessness occurs when a person, *with no intent to cause harm,* performs an act so unreasonable and so dangerous that he or she knows, or should know, that harm will probably result.

Pattern Jury Instructions for Civil Practice in the Superior Court of the State of Delaware (Oct. 17, 1997) (emphasis added) (citing Del. Code. Ann. tit. 11, § 231(c) (1997); *Jardel Co. v. Hughes,* 523 A.2d 518, 529–30 (Del. Supr.1987)).

fore, it is believed the Delaware Supreme Court is likely to follow the lead of Pennsylvania and Maine and hold that IIED claims do not necessarily fall within an intentional act exclusion.

Moreover, an independent application of Delaware's definitions of "recklessness" to the *Farmer in the Dell* test proves that IIED does not fall under an intentional act exclusion. The second prong of the *Farmer in the Dell* test requires an intent to cause some injury or damage.[9] *See Farmer in the Dell*, 514 A.2d at 1100. However, according to the definitions of IIED and "recklessness," IIED only requires a disregard of a substantial and unjustifiable risk of harm, and not an intent to harm. Therefore, IIED claims, as a matter of law, do not necessarily fall under the *Farmer in the Dell* interpretation of intentional act exclusions when, as in this case, a "recklessness" component is alleged in the underlying complaint.

The Defendants rely on *Hackendorn* to argue that reckless conduct is covered by the intentional act exclusion. *See Hackendorn*, 605 A.2d at 5. In that case, Hackendorn entered a hair salon with the intent to shoot his wife and discharged his shotgun twice, killing his wife and wounding a bystander. The bystander sued Hackendorn for an intentional tort[10] and he, in turn, sued his insurance carrier for indemnification. *See id.* at 5–6. The court noted that Hackendorn had pled guilty to second degree murder of his wife, which is "recklessly causing the death of another" and could have been convicted of "reckless endangerment" of the bystander. *See id.* at 10–11. The court held that these actions were akin to intentional conduct and, therefore, fell under an intentional act exclusion. *See id.* at 11. The Defendants argue to extrapolate this holding so that all reckless conduct falls under intentional act exclusions. However, the Defendant's argument is not persuasive for three reasons.

First, the court in *Hackendorn* was considering only whether an "intentional tort" fell under the intentional act exclusion. The court did not specify what intentional tort this was and did not state whether it was provable by recklessness. *See id.* at 6. Judging from the facts of that case, the tort was likely assault or battery, which can only be proven by intent, not by recklessness. The court did not explicitly address whether the tort of IIED, or any other tort provable by recklessness, would be covered under an intentional act exclusion.

Second, in *Hackendorn*, the court found that Hackendorn's state of mind amounted to criminal recklessness, which is a more culpable mental state than civil reckless-

Finally, the Delaware Criminal Code definitions, while not the same as civil tort definitions, similarly distinguish between intent and recklessness:

(a) "Intentionally".—a person acts intentionally with respect to an element of an offense when:

(1) If the element involves the nature of the person's conduct or a result thereof, it is the person's conscious object to engage in conduct of that nature or to cause that result; and

(2) If the element involves the attendant circumstances, the person is aware of the existence of such circumstances or believes or hopes that they exist.

(c) "Recklessly".—a person acts recklessly with respect to an element of an offense when the person is aware of and consciously disregards a substantial and unjustifiable risk that the element exists or will result from the conduct. The risk must be of such a nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. a person who creates such a risk but is unaware thereof solely by reason of voluntary intoxication also acts recklessly with respect thereto.

11 Del.Code § 231(c) (1999).

9. Because the Court holds that IIED does not meet the second prong of the *Farmer in the Dell* test, there is no reason to analyze the first and third prongs of that test.

10. Unfortunately, the Court's opinion does not specify under which tort the bystander sued the plaintiff. It merely states that it was an "intentional tort." *See id.* at 6.

ness. The court noted that the Hackendorn had pled guilty to second degree murder, which defines recklessly as "a cruel, wicked, or depraved indifference to human life." *Id.* at 10–11. This is a more culpable mental state than civil recklessness which is a knowing disregard of a high degree of risk of harm. *See* Restatement (Second) of Torts § 500. The court also noted that Hackendorn could have been convicted of "reckless endangerment," which requires a "gross deviation from the standard of conduct that a reasonable person would observe" and is conduct "akin to the intentional infliction of harm." *See Hackendorn,* 605 A.2d at 11.

In contrast, civil recklessness, as the term is used in an IIED claim, does not require a "gross" deviation and is distinct from intentional conduct. *See* Restatement (Second) of Torts § 500. Moreover, the Delaware Criminal Code definitions of criminal recklessness require a higher degree of culpability than civil recklessness.[11] Finally, courts have found that criminal recklessness falls under an intentional act exclusion while civil recklessness does not. *Compare Fed. Ins. Co. v. Potamkin,* 961 F.Supp. 109, 113 (E.D.Pa.1997) (criminal recklessness falls under intentional act exclusion) *with Elitzky,* 358 Pa.Super. at 377, 517 A.2d at 990 (civil recklessness does not fall under intentional act exclusion). Delaware courts will likely follow the lead of Pennsylvania and decide that civil recklessness under an IIED claim is not covered by an intentional act exclusion.

**11.** *See, supra,* note 9.

**12.** *See Concord General Mut. Ins. Co. v. Hale,* 952 F.Supp. 31, 31 (D.Me.1997) (IIED claims generally do not fall under intentional act exclusion because they are provable by recklessness; however, in this case, the allegations of sexual abuse can only be proven by showing intent, so the claim falls under the exclusion); *Perreault v. Maine Bonding & Casualty Co.,* 568 A.2d 1100, 1101 (Me.1990) (same); *Russ v. Great Am. Ins. Companies,* 121 N.C.App. 185, 189, 464 S.E.2d 723, 726 (1995) (IIED claims generally allow proof by

Third, the *Hackendorn* court considered the second degree murder and reckless endangerment criminal charges as one factor in considering whether Hackendorn's conduct was intentional. *See Hackendorn,* 605 A.2d at 11. The court also considered the manner in which he planned the murder and the way he reloaded his gun after shooting his wife once. *See id.* The court held that the plaintiff had committed an intentional act of discharging his shotgun, with the intent to harm his wife, and that harming the bystander was a foreseeable consequence of his actions. *See id.* at 11. Given the foregoing discussion, it cannot be said that *Hackendorn* stands for the proposition that all reckless conduct falls under the intentional act exclusion. Rather, it holds that in some cases criminal recklessness, in the presence of other intentional acts, may give rise to an inference of intent to harm for purposes of intentional act exclusions.

For the foregoing reasons, this Court holds that, because the IIED claims in the underlying complaint may be proven by showing recklessness, they do not necessarily fall under an intentional act exclusion. Instead, the Court must also look at the particular allegations of the underlying complaint and determine whether they fall under the exclusion. Other states have held that if a complaint containing an IIED claim alleges only intentional conduct then the claim will fall under the intentional act exclusion.[12]

■ However, in this case, the Court finds that the underlying complaint does not allege only intentional conduct.[13]

intent or recklessness; however, in this cases the sexual harassment allegations allege that the defendant had knowledge with substantial certainty, which is equivalent to intent, so the claims fall under the exclusion).

**13.** Count VI of underlying complaint alleges, in pertinent part, that:

165. Defendants' actions were committed intentionally or with reckless indifference to the severe emotional distress these actions would have been expected to inflict upon Plaintiffs.

Based on the allegations in the complaint, the jury could find Louis liable for IIED in three alternative ways. First, the jury could find that Louis committed the acts alleged with the intent to cause severe emotional distress to the Fahey family and actually did cause the family severe emotional distress. Second, the jury could find that Louis committed the acts alleged with the intent to cause another harm (such as harm to the police investigation) and with recklessness disregard of the Fahey family's emotional distress. In that instance, a jury could find that Louis' actions caused severe emotional distress, and that the emotional distress caused by Louis was a foreseeable consequence of his intent to cause the other harm (hindering the police investigation). Third, the jury could find that Louis committed the acts alleged with reckless disregard of the Fahey family's emotional distress and that his acts actually caused emotional distress.

The first two alternatives would fall under the intentional act exclusions, as defined in *Farmer in the Dell*, because the jury would find an intentional act, an intent to cause a harm, and causing the intended harm or a reasonably foreseeable harm. *See Farmer in the Dell,* 514 A.2d at 1099. However, the third alternative would not fall under the intentional act exclusion because the jury could find that Louis had no intent to cause any harm, but that he merely acted recklessly. In that instance, while Louis' alleged conduct was clearly reprehensible, the allegations of the complaint do not fall under the intentional act exclusions of the insurance contracts.

Finally, Defendants argue that there is a strong public policy against providing insurance coverage for Louis for his intentional cover-up of a brutal murder. *See* D.I. 18 at 12–13 (citing *Hackendorn,* 605 A.2d at 12); D.I. 21 at 11 (citing *Hackendorn*). Defendants argue that Louis' action is at least as repugnant to the law as

Hackendorn's criminal conduct of shooting his wife and a bystander.

However, the Defendants ignore an equally important, and countervailing, public policy of resolving all ambiguities in insurance contracts in favor of the insured and resolving all ambiguities in the underlying complaint against the insurer. *See Continental Casualty,* 317 A.2d at 105. Delaware has maintained a strong public policy in favor of finding insurance coverage absent very clear evidence to the contrary. *See id.* Since the insurances policies are ambiguous as to whether they cover recklessness and since the underlying complaint provides an option for proof of recklessness, the Plaintiffs should be covered by the insurance policies.

Thus, both as a matter of law, and as applied to the underlying complaint in this case, the Count VI, for IIED, does not fall under the intentional act exclusion of the insurance policy and the Defendants have a duty to defend this claim.

### E. Count VII: Conspiracy

■ Count VII alleges conspiracy to obstruct justice and to intentionally or recklessly inflict emotional distress. Civil conspiracy requires (1) an agreement between two or more people; (2) an unlawful act done to further the conspiracy; and (3) damage to the plaintiff. *See Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149–50 (Del. Supr.1987). Thus, a civil conspiracy claim requires an underlying wrong. *See Ramunno v. Cawley,* 705 A.2d 1029, 1039 (Del.1998).

■ Count VII alleges that the underlying wrong is "to obstruct justice and to intentionally or recklessly inflict emotional distress upon the Faheys." This claim contains at least the tort of IIED as an underlying wrong. Because there is a duty to defend the underlying wrong of IIED, as discussed *supra,* there is a corre-

166. As a direct and proximate result of Defendants' actions, the Faheys have suffered and will continue to suffer extreme emotional distress, mental anguish, and humiliation.

**332**

sponding duty to defend the civil conspiracy claim.

## V. Conclusion

The Defendants have a duty to defend the Plaintiffs on Counts VI and VII of the underlying complaint. This means that the Defendants must defend the Plaintiffs on the entire underlying suit until final resolution of Counts VI and VII. *See Continental Casualty,* 317 A.2d at 105 ("if even one count or theory of plaintiffs complaint lies within the coverage of the policy, the duty to defend arises"). Plaintiffs shall submit a proposed order with notice on or before December 17, 1999.